<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROSE M. ORTIZ,<br><br>      Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civil Action No. 16-1642 (SDW)<br><br><br>**OPINION**<br><br><br>January 4, 2016 |

**WIGENTON,** District Judge.

   Before this Court is Plaintiff Rose M. Ortiz's ("Plaintiff" or "Ortiz") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, the Commissioner's decision is **VACATED** and **REMANDED** for further proceedings.

I.  <u>PROCEDURAL AND FACTUAL HISTORY</u>

   **A.  Procedural History**

   On August 9, 2012, Plaintiff applied for Supplemental Security Income Benefits ("SSIB") alleging disability as of April 1, 2012 due to asthma, hypertension, anxiety, and aortic valve prolapse. (R. 55, 139-44.) Plaintiff's application for SSIB was denied both initially and upon

reconsideration.   (R. 77-81, 85-87.)   Plaintiff's subsequent request for a hearing before an administrative law judge ("ALJ") was granted, and a hearing was held before ALJ Donna A. Krappa ("ALJ Krappa") on June 11, 2014.  (R. 6-8, 26-53.)  On November 12, 2014, ALJ Krappa issued a decision finding Plaintiff was not disabled and denying her application for benefits.  (R. 9-25.)  On January 27, 2016, the Appeals Council denied Plaintiff's request for review of ALJ Krappa's November 12, 2014 decision, making it the Commissioner's final decision.  (R. 1-5.) Plaintiff now requests that this Court reverse the Commissioner's decision and remand for an award of SSI benefits.  (Compl. 3.)

### B.  Factual History

#### 1. Personal and Employment History

Plaintiff was 40 years old at the time of ALJ Krappa's decision in 2014.  (R. 126.)  She currently resides in Elizabeth, New Jersey with her five children, ages 21, 18, 12, 8 and 6.  (R. 31.) Plaintiff received her GED in 1994 and has previously worked as a babysitter and a sales associate starting in 1998, but stopped in 2000 to stay home and raise her children.  (R. 154, 157-58.)  She has not had significant employment in the past 16 years.  (*Id*.)

#### 2.  Medical History

Plaintiff alleged in her original "Disability Report" that she is unable to work due to both physical ailments and psychiatric ailments.  (R. 153-163.)  Specifically, Plaintiff contends that she suffers from "asthma, hypertension, anxiety, and aortic valve prolapse."  (R. 157.)  Plaintiff testified that she has suffered from these ailments prior to the date of disability, but applied for disability benefits in 2012 when her symptoms worsened.  (R. 38.)

### 1. Physical Impairments

Plaintiff has seen Lorna B. Bayes, M.D. ("Dr. Bayes") for annual examinations from June 2006 through July 2012. (R. 209-28.) Over the course of treatment, Dr. Bayes diagnosed Plaintiff with hypertension, asthma, headaches, leg edema and diabetes. (*Id*.)

During her first annual exam in 2006, Plaintiff complained of headaches that started in August of 2005, but have increased in frequency and were accompanied by nausea. (R. 228.) Dr. Bayes prescribed Fioricet to help with Plaintiff's pain and ordered a CT scan of her head. (*Id*.) In 2009, Plaintiff stated she was still suffering from headaches about twice a week and in 2012, Plaintiff was admitted to the hospital after complaining of a slow onset headache with pain rated at a 7 out of 10, and swelling of her legs. (R. 197, 222, 224.) She was diagnosed with a headache and leg edema, then discharged the same day. (R. 204.)

Dr. Bayes' progress notes also indicate that Plaintiff was obese. (R. 209-228.) Over the course of treatment, Plaintiff has gained over 60 pounds and currently has a BMI of 40.[1] (R. 39-40, 209-228.) On multiple occasions, Dr. Bayes discussed weight loss and healthy diet options with Plaintiff to improve her overall health. (R. 216, 219.)

Dr. Bayes' progress notes consistently report that Plaintiff had high blood pressure, which occasionally caused chest pain and edema in her lower extremities. (R. 42, 46, 209-228.) She diagnosed Plaintiff with hypertension, which has subsequently been controlled by medication. (*Id*.) However, Plaintiff testified that her blood pressure was not under control and her medications had not been stabilized because of side effects such as drowsiness, dizziness and swelling. (R. 42, 46, 166.)

---

[1] Plaintiff testified that her medications, such as Prednisone, have contributed to her weight gain. (R. 43.)

In 2011, Plaintiff went to the Emergency Room via ambulance after experiencing severe chest pain. (R. 187.) During the evaluation, her respiratory and neurological examinations were normal, there were no abnormal cardiovascular sounds, murmurs or heart rhythms. (R. 190.) She was diagnosed with hypertension and chest pain. (R. 195.) On two separate occasions in 2012, Plaintiff was again admitted to the hospital with similar complaints of chest pain. (R. 231-38.) An electrocardiogram ("ECG") was abnormal and Plaintiff was diagnosed with hypertension and atypical chest pain, which subsided spontaneously. (R. 238-39.)

In June 2012, Plaintiff was referred to Meeta Bhaat, M.D., Ph.D ("Dr. Bhaat") for a sleep study after reporting she was feeling excessively tired during the daytime and snoring while asleep. (R. 218.) After an evaluation, Dr. Bhaat diagnosed Plaintiff with obstructive sleep apnea with hypersomnia. (R. 207.) She advised Plaintiff that losing weight would positively impact her disorder and additional tests should be performed. (*Id*.)

From 2006 through 2012, Dr. Bayes consistently noted that Plaintiff suffered from asthma, (R. 209-227), which was so severe Plaintiff testified that she could not go outside in the summer. (R. 39.) Plaintiff was prescribed an Albuterol Inhaler, as well as Advair Diskus to reduce her symptoms, which she takes to this day. (R. 174, 177, 209-227.)

In 2013, Plaintiff was admitted to the hospital with flu-like symptoms, as well as shortness of breath, coughing, wheezing, and chest tightness. (R. 248.) She was diagnosed with an infection, which exacerbated her asthma. (*Id*.) After administration of medication, Plaintiff saw improvement in her asthmatic symptoms and was discharged four days later. (R. 249.) Her final diagnoses included asthma, hypertension, obesity and suspected obstructive sleep apnea. (R. 248.)

Later that year, Plaintiff was prescribed Prednisone, in addition to her Albuterol inhaler (Ventolin) and Advair Diskus to better manage her asthma. (R. 29.) The Prednisone treatment

4

raised Plaintiff's blood sugar and consequently caused diabetes.[2]  (*Id.*)  Plaintiff's diabetes has since been managed with medication.  (R. 174-180.)

## 2.  Mental Impairments

Plaintiff has experienced mental ailments prior to her alleged onset date of disability and has a history of abuse and trauma.  (R. 258.)  During her childhood, she reported being sexually abused by her step-father starting at the age of 7 and she attempted suicide at 15.  (R. 255, 269, 271.)  Plaintiff was also assaulted and knocked unconscious during the commission of a robbery at her job in 2000.  (R. 262.)

In a 2009 annual exam, Plaintiff reported experiencing anxiety and depression about two times per month.  (R. 224.)  Later that year, Plaintiff stated that she felt as if "something was squeezing her heart" and Dr. Baynes diagnosed her with acute anxiety and prescribed Xanax, which Plaintiff continues to take.  (R. 222, 247.)

On January 27, 2014, Dr. Bayes referred Plaintiff to Trinitas Regional Medical Center, Outpatient Psychiatric Unit, due to symptoms of anxiety and depression.  (R. 262.)  Plaintiff reported sleeping all day, having crying spells, feeling panicked and suffocated, and having little energy, but denied suicidal or homicidal thoughts.  (R. 262-63.)  She further stated that she had been feeling this way for about a year.  (R. 263.)  Dr. Kelly McEwen diagnosed Plaintiff with depressive disorder, posttraumatic stress disorder ("PTSD") and an anxiety disorder, and assessed Plaintiff with a Global Assessment of Functioning ("GAF") of 50.[3]  (R. 257.)  She was then admitted to the Outpatient Psychiatrist Unit for further evaluation.  (*Id.*)

---

[2]  Medical records indicate Plaintiff previously suffered from gestational diabetes in 2008.  (R. 225.)

[3]  A GAF score is a subjective rating that reflected an individual's overall level of functioning at the time of examination.  *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (DSM-IV-TR),* 32-35 (4th ed., text rev., 2000).  The GAF scale is divided into ten ranges

During a February 11, 2014 mental status examination, Dr. Nicholas King, Ph.D., the psychiatrist at the Outpatient Psychiatric Unit, noted that Plaintiff's mood was depressed, but her thoughts were relevant and goal directed, she appeared well-groomed and well-dressed, she was cooperative, accessible and related well.  (R. 254.)  He diagnosed Plaintiff with major depressive disorder and an anxiety disorder.  (R. 256.)  She was further assessed with a GAF of 55.  (*Id.*)  Plaintiff has since seen Dr. King once a month for pharmaceutical and therapeutic treatment.  (R. 45, 253.)

### 3. Hearing Testimony

At a hearing conducted by ALJ Krappa on June 11, 2014, Plaintiff testified about her education, previous employment, medical conditions, treatment and daily activities.  (R. 30-47.)

Plaintiff stated she is currently unable to work because it is difficult for her to concentrate, she loses her train of thought and is constantly dizzy.  (R. 33.)  As to her physical abilities, she testified that she cannot walk half a block because she gets winded easily due to her asthma.  (R. 34.)  Further, she asserted she cannot stand for more than 30 minutes due to sciatic pain and she can sit for only 15 minutes before she starts to feel tingling and numbness in her feet.  (R. 34-35.)

In lieu of a function report, Plaintiff testified she generally wakes up around 7:30 a.m., checks her blood glucose levels, and takes her medications.  (R. 36.)  Her oldest daughter helps the younger children get ready for school and Plaintiff stays home and naps until they return around 3:00 p.m.  (R. 36-7.)  Plaintiff testified that although she has her driver's license, she rarely leaves

---

of functioning, and rates psychological, social, and occupational functioning. A GAF score of 41 to 50 corresponds to serious symptoms or serious difficulty in social, occupational, or school functioning. A score of 51 through 60 signifies moderate symptoms or difficulty.  *Id.* at 34.

the house due to a history of fainting and drowsiness.  (R. 39, 41.)  At night, Plaintiff's daughter or her son's girlfriend cooks dinner for Plaintiff and her children. (R. 40.)  Plaintiff's children perform many of the household chores, such as laundry and grocery shopping.  (R. 40.) Plaintiff frequently suffers from severe headaches in the evenings, so she takes her medication and is asleep by 9:30 p.m.  (R. 44.)

Vocational Expert Mary Anderson ("VE Anderson") also testified at the administrative hearing to determine whether there exists work in the national economy that someone such as Plaintiff could perform.  (R. 47-51.)  VE Anderson opined that based on a hypothetical individual with Plaintiff's limitations,[4] there exists several jobs in the light exertional range that Plaintiff could perform such as an office helper, an information clerk, and a storage facility rental clerk. (R. 48.)   When ALJ Krappa asked whether the same hypothetical individual with additional limitations[5] could find employment, VE Anderson averred that such individual could not perform any job in the national economy.  (R. 49.)  Further, if Plaintiff was off-task over ten percent of the workday, it would preclude employment.  (R. 51.)

## II.    LEGAL STANDARD

### A.  Standard of Review

---

[4] The hypothetical posed by ALJ Krappa limited Plaintiff to lifting 20 pounds occasionally and 10 pounds frequently; standing or walking for six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; and performing unlimited pushing and pulling. Plaintiff cannot use ladders, ropes, or scaffolds; can occasionally use ramps or stairs; can occasionally balance, stoop, kneel, crouch and crawl; cannot have any exposure to unprotected heights, hazards or dangerous machinery; and can have no exposure to temperature extremes, wetness or humidity, or excessive vibration. Plaintiff also cannot have any exposure to undue amounts of dust or known chemical irritants. Finally, she is limited to simple and repetitive tasks.  (R. 47-48.)
[5] ALJ Krappa posed two scenarios with additional limitations. In the first scenario, the hypothetical person could only concentrate six of the eight hours in a workday. In the second scenario, he or she could be absent from work at least two times per month due to headaches and depression.  (R. 49.)

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he

rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B.  The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 480 (3d. Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable

of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).  At this point in the analysis, the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.   DISCUSSION

### A.  The SSA's Decision

On November 12, 2014, ALJ Krappa issued a decision concluding Plaintiff was not disabled and therefore was not eligible for Social Security Disability Benefits.  (R. 22.)  At step one of the disability analysis, ALJ Krappa found that Plaintiff had not engaged in SGA since April 1, 2012, the alleged onset date of Plaintiff's disability.  (R. 15.)  At step two, ALJ Krappa found that Plaintiff suffered from the following severe impairments: obstructive sleep apnea, migraine headaches, diabetes, hypertension, obesity, depression, and anxiety.  (*Id*.)

However, at step three, ALJ Krappa determined that Plaintiff's impairments do not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  First, ALJ Krappa concluded that Plaintiff's sleep apnea does not functionally equal the severity of Listing 3.10 because "she does not have a mean pulmonary artery pressure greater than 40 mm HG or arterial hypoxemia."  (R. 15.)  ALJ Krappa then found that Plaintiff's hypertension does not meet the severity of the Listing because it has "not caused disability through its effects on other specific body systems," and Plaintiff's diabetes does not meet the severity of the Listing because her blood glucose levels are

controlled through medication and it did not cause permanent kidney failure, neuropathy or retinopathy. (*Id.*) ALJ Krappa also found that Plaintiff's headaches failed to meet the severity of Listing 11.00 because the medical records failed to show evidence of any neurological deficits. (R. 16.) ALJ Krappa considered Plaintiff's obesity and its impact in causing or contributing to co-existing impairments and found it would not prevent her from performing the demands of light work. (*Id.*) Lastly, ALJ Krappa considered Plaintiff's mental impairments, singly and in combination, and determined they do not equal the criteria in listing 12.04. (*Id.*) She concluded that Plaintiff did not satisfy "paragraph B" criteria because there was no evidence of at least two "marked" limitations in two domains of functioning or one "marked" limitation and repeated episodes of decompensation. (R. 16-17.) She also found Plaintiff did not satisfy "paragraph C" criteria. (R. 17.)

ALJ Krappa then addressed Plaintiff's residual functional capacity, finding that Plaintiff:

> "is capable of demands of light work …. Specifically, she is able to: lift/carry 20 [pounds] occasionally and 10 [pounds] frequently; stand/walk for 6 hours in an eight-hour work day; sit for 6 hours in an eight-hour work day; and perform unlimited pushing and pulling within the weight restriction given. Moreover, regarding the postural and environmental demands of work, … [Plaintiff] is able to perform jobs that require no use of ladders, ropes or scaffolds; that require only occasional use of ramps or stairs; that require occasional balancing, stooping, kneeling, crouching, and/or crawling; that require no exposure to unprotected heights, hazards or dangerous machinery; that involve no exposure to temperature extremes, wetness, humidity, and/or excessive vibration; and that involve no exposure to undue amounts of dust or known chemical irritants. Furthermore, as to the mental demands of work, … [Plaintiff] is able to perform jobs that are simple and repetitive."

(R. 17-18.) At step four, the ALJ determined that these limitations would prevent Plaintiff from being able to perform her past relevant work. (R. 21.) At step five, ALJ Krappa found that even with the prescribed limitations, Plaintiff would be able to perform the

nationally available jobs as an office helper, information clerk, and storage facility rental clerk.  (R. 21-22.) Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  (R. 22.)

### B. The ALJ Must Evaluate All the Evidence and Explain the Basis for Her Conclusions

The ALJ must consider all relevant evidence when determining an individual's residual functional capacity in step four.  *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; *Burnett*, 220 F.3d at 121.  This evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others.  *See* 20 C.F.R. § 404.1545(a).  Moreover, the ALJ's finding of residual functional capacity must "be accompanied by a clear and satisfactory explication of the basis on which it rests."  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981).  If the explanation of the ALJ's decision is inadequate, the case should be vacated and remanded to the ALJ in order to fully develop and explain the factual findings.  *See Burnett*, 220 F.3d at 121 (ordering remand where ALJ did not explain why he rejected certain evidence that supported plaintiff's claim).

 ALJ Krappa improperly determined Plaintiff's RFC by giving insufficient analysis to the effects of Plaintiff's credible medical ailments and failing to explain the basis of her findings.  Specifically, the ALJ failed to sufficiently address Plaintiff's migraine headaches, PTSD and anxiety.

After determining Plaintiff's migraines were severe at step two, the ALJ failed to note whether those migraines or her migraine medication limited Plaintiff's ability to work.  Plaintiff testified that her concentration is impaired due to her severe migraines and she would lose her train of thought.  The record further shows numerous instances where her migraines affected her

activities of daily living and how the combination of Plaintiff's medications caused numerous negative side effects.  ALJ Krappa failed to address these facts in her RFC assessment. (R. 33.)

In relation to Plaintiff's mental impairments, ALJ Krappa concluded that Plaintiff could perform jobs that are "simple and repetitive" but does not explain how she arrived at that conclusion.  (R. 18.)  The ALJ stated that Plaintiff's impairments "have been described in various terms: depressive disorder, anxiety disorder, and posttraumatic stress disorder," but did not consider the effects and limitations of each mental illness separately.  (R. 20.)  She also failed to address Plaintiff's GAF assessment of 50, which indicates serious symptoms or difficulty in social and occupational functioning.   (R. 257.)  Overall, the reference that Plaintiff can perform simple and repetitive tasks does not "specifically convey" her mental limitations and "greater specificity is required." *See Burns v. Barnhart*, 312 F. 3d 113, 112 (3d. Cir. 2002) (holding that the finding that Plaintiff could perform "simple repetitive one, two-step tasks" was not sufficiently descriptive to encompass her limitation).

Because the ALJ did not clearly evaluate all medical evidence when determining Plaintiff's RFC, this Court cannot assess whether the ALJ's finding that Plaintiff can perform light work is supported by substantial evidence. To allow for meaningful judicial review, ALJ Krappa must examine and explain all limitations in determining Plaintiff's RFC.

### C.  The ALJ's Finding That There Are Jobs that Exist in the National Economy That Plaintiff Can Perform is Not Supported by Substantial Evidence

A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the questions accurately portray the claimant's individual physical and mental limitations." *Podedworny*, 745 F.2d at 210. If there exists substantial evidence supporting the claimant's condition as portrayed by the ALJ, then the ALJ may rely on vocational expert testimony.  *Schonewolf v. Callahan*, 972

F. Supp. 277 (D.N.J. 1997) (citing *Dumas v. Schweiker*, 712 F.2d 1545 (2nd Cir.1983)).  However, if the ALJ's hypothetical question to the vocational expert does not accurately convey all Plaintiff's impairments and limitations, a decision denying SSI benefits cannot be considered to be supported by substantial evidence.  *Ramirez v. Barnhart*, 372 F.3d 546 (3d. Cir. 2004).

Here, ALJ Krappa relied on VE Anderson's expert opinion in finding that there existed a significant number of jobs in the economy that Plaintiff could perform[6] and determined Plaintiff was not disabled. (*Id.*)  VE Anderson's expert opinion cannot be considered substantial evidence because the hypotheticals posed to her by the ALJ did not convey all of Plaintiff's credible limitations as discussed above.  *See Ramirez v. Barnhart*, 372 F.3d 546 (3d. Cir. 2004).  Thus, the ALJ's finding at step five is not supported by substantial evidence because it relied on flawed vocational expert testimony and warrants remand.[7]

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the ALJ's decision is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.

s/ <em>Susan D. Wigenton</em><br>
<strong>SUSAN D. WIGENTON</strong><br>
<strong>UNITED STATES DISTRICT JUDGE</strong>

Orig:   Clerk
cc:     Parties

---

[6] ALJ Krappa stated that she "fully credit[s] Ms. Anderson's expert opinion" and found VE Anderson's representation to be a "significant number" of jobs.  (R. 22.)

[7] Remand is appropriate where, as is the case here, relevant and probative evidence was not explicitly and accurately weighed in arriving at a decision on the plaintiff's claim for disability benefits.  *See Dobrowolsky*, 606 F.2d at 403 (citation omitted).  Remand will allow the ALJ to properly consider all Plaintiff's credible limitations in arriving at her RFC and further pose an accurate and comprehensive hypothetical to VE Anderson which can be used to support the ALJ's finding at step five.